```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
COUNTY OF NASSAU, NEW YORK, COUNTY
OF SUFFOLK, NEW YORK, FEDERATION
EMPLOYMENT AND GUIDANCE SERVICES,
INC., LONG ISLAND MINORITY AIDS
COALITION, INC., THURSDAY'S CHILD,
INC., TRACI BOWMAN, MIRIAM SPAIER,
JEROME KNIGHT, and DONNA UYSAL,

                    Plaintiffs,

         - against -                        ORDER
                                            07-CV-816(JS)(ETB)
MICHAEL O. LEAVITT, in his official
capacity as Secretary of Health and
Human Services of the United States
Department of Health and Human
Services, ELIZABETH M. DUKE, in her
official capacity as Administrator
for the Health Resources and Services
Administration of the United States,
Department of Health and Human
Services, and the UNITED STATES
DEPARTMENT OF HEALTH AND HUMAN
SERVICES,

                    Defendants.
----------------------------------X
APPEARANCES:

For Plaintiffs:        Peter J. Clines, Esq.
                       Nassau County Attorney
                       One West Street
                       Mineola, New York 11501

For Defendants:        Thomas A. McFarland, AUSA
                       Eastern District of New York
                       610 Federal Plaza
                       Central Islip, New York 11722
```

SEYBERT, District Judge:

### INTRODUCTION

Before this Court is Plaintiffs' motion for a temporary restraining order ("TRO") and preliminary injunction ("PI"). On

February 28, 2007, at a hearing, this Court DENIED Plaintiffs' motion for the TRO. The parties consented to treating the denial of the TRO as a denial of the PI for purposes of appealing immediately to the Second Circuit.

## BACKGROUND

This case involves funding for medical and support services for HIV and AIDS patients in Nassau and Suffolk Counties ("Nassau-Suffolk") in Long Island, New York. The funding is provided through a federal statute known as the Ryan White HIV/AIDS Treatment Modernization Act of 2006 ("Act"). All of the Plaintiffs had received funding under previous versions of the Act (collectively referred to as the "Ryan White Legislation"). However, Congress amended the Act on December 19, 2006, and revised the way in which areas received funding through the Act. (Complaint ("Compl.") ¶ 1.)

Congress enacted the Ryan White Legislation to provide emergency relief funding to localities disproportionately affected by the HIV epidemic. (Id. at ¶ 17.) The funds were to assist localities in providing development, organization, coordination, and operation of effective and cost-efficient systems for delivery of essential services to individuals living with HIV and AIDS. (Id.) Nassau-Suffolk was one of these localities that received this emergency funding. For fiscal year 2006, Nassau-Suffolk received $6,148,307 in funding. (Id. at ¶ 28.)

In 2006, Congress amended the Act to distinguish between two types of localities to receive grants: (1) eligible metropolitan areas ("EMAs") and (2) transitional grant areas ("TGAs"). (Id. at ¶¶ 20-23.) A locality is an EMA if it reported 2000 or more AIDS cases during the last five years. A locality is a TGA if it had at least 1000 AIDS cases but less than 2000 AIDS cases reported during the last five years. See 42 U.S.C. §§ 300ff-11, 300ff-19.

On February 12, 2007, Defendant United States Department of Health and Human Services ("DHHS") informed Nassau County Executive Thomas R. Suozzi ("Suozzi") that Nassau-Suffolk no longer qualified as an EMA but would now be categorized as a TGA. (Compl. ¶¶ 33-34; Pls.' Mem. 7.) DHHS also informed Suozzi that the change in status "may result in [Nassau-Suffolk's] FY 2007 award being less than the FY 2006 award." (Pls.' Mem. 7.) DHHS did not provide any further information about the exact cut in funding that would result from the change in Nassau-Suffolk's status. (See id.) Plaintiffs allege, however, that $458,310,000 is available for 22 EMAs and only $145,690,000 is available for 34 TGAs. (Id. at 5.) Plaintiff claims that this indicates a funding reduction. (Id.)

Another issue in this case is certain restrictions on how localities spend Ryan White funding. The Act now requires 75% of grant funding to be used for core medical services and the remaining 25% of funding to be used for either support services or

-3-

administrative expenses. (Compl. ¶ 38.) Despite this restriction on how to spend the funding, the Act provides a waiver for the cap under certain circumstances. A waiver may be granted if a locality does not have any waiting lists for AIDS drug assistance program services and core medical services are available to all individuals with HIV/AIDS. (Id. ¶ 39.)

Nassau-Suffolk allegedly has no waiting list for AIDS Drug Assistance Program services, and core medical services are already available to all individuals with HIV/AIDs in Nassau-Suffolk. (Id. ¶¶ 40-41.) However, Plaintiffs believe that waivers will not be provided during fiscal year 2007. (Id. ¶ 42.) During 2006, Nassau-Suffolk used in excess of 40% of their funding for support services, chiefly transportation, client advocacy, emergency financial assistance, housing assistance, and legal services. (Id. ¶ 43.)

On February 27, 2007, Plaintiffs commenced this action, by way of an order to show cause for a TRO and PI. Plaintiffs requested that this Court (1) enjoin Defendants from downgrading Nassau-Suffolk from an EMA to a TGA and (2) direct Defendants to waive the 25% cap on support services. The Court, however, addresses only the first part of Plaintiffs' requested relief: the change in Nassau-Suffolk's status from an EMA to a TGA. At the hearing, the parties agreed that Nassau County's waiver application would be decided in two weeks. (TRO Hr'g Tr. 25, Feb. 28, 2007).

**DISCUSSION**

I. <u>Legal Standard</u>

Granting PI relief is "an extraordinary and drastic remedy which should not be routinely granted." <u>NextG Networks of N.Y., Inc. v. City of New York</u>, 03-CV-9672, 2004 U.S. Dist. LEXIS 25063, at *12 (S.D.N.Y. Dec. 10, 2004). For this Court to issue a TRO or PI against "government action taken in the public interest pursuant to a statutory or regulatory scheme," the Plaintiffs must show "(i) irreparable harm absent the injunction and (ii) a likelihood of success on the merits." <u>Freedom Holdings, Inc. v. Spitzer</u>, 408 F.3d 112, 114 (2d Cir. 2005) (citations omitted). A plaintiff satisfies the irreparable harm requirement when it shows that absent a preliminary injunction, it "will suffer 'an injury that is neither remote nor speculative, but actual and imminent,' and one that cannot be remedied 'if a court waits until the end of trial to resolve the harm.'" <u>Id.</u> (citations omitted).

II. <u>Plaintiffs Have Not Shown A Likelihood Of Success On The Merits.</u>

At the hearing, Defendants did not focus on whether Plaintiffs would be irreparably harmed. Defendants focused on whether Plaintiffs met the second requirement to obtain PI relief: likelihood of success on the merits. For the reasons below, the Court finds that Plaintiffs do not have a likelihood of success on the merits.

The second prong that Plaintiffs must meet for this Court

to issue a preliminary injunction is a likelihood of success on the merits. See Freedom Holdings, Inc., 408 F.3d at 114. For purposes of a preliminary injunction, however, this Court need not find with "absolute certainty" that Plaintiffs will succeed on the merits of their claims. Wali v. Coughlin, 754 F.2d 1015, 1025 (2d Cir. 1984) ("A movant . . . need not show that success is an absolute certainty. He need only make a showing that the probability of his prevailing is better than fifty percent. There may remain considerable room for doubt.") Thus, a finding that a plaintiff has more than a fifty-fifty chance of succeeding on the merits of their claims would warrant a finding of a likelihood of success on the merits.

  The Act defines an EMA as "any metropolitan area for which there has been reported to and confirmed by the Director of the Centers for Disease Control and Prevention [("CDC")] a cumulative total of more than 2,000 cases of AIDS during the most recent period of 5 calendar years." 42 U.S.C. § 300ff-11(a). The Act defines a TGA as "a metropolitan area for which there has been reported to and confirmed by the Director of the [CDC] a cumulative total of at least 1,000, but fewer than 2,000, cases of AIDS during the most recent period of 5 calendar years for which such data is

available."  42 U.S.C. § 300ff-19(b).

Nassau-Suffolk's area case count for the period 2001-2005 was 1505, which the Director of CDC reported and confirmed.  Based on this report, Defendants downgraded Nassau-Suffolk from an EMA to a TGA.  This re-classification was a literal application of the statutes just cited.

Plaintiffs, however, claim that because they were an EMA in 2006, they are allowed "continued status" as an EMA.  Plaintiffs rely on 42 U.S.C. § 300ff-11(b), entitled "Continued status as eligible area."  That subsection reads

> Notwithstanding any other provision of this section, a metropolitan area that is an eligible area for a fiscal year continues to be an eligible area until the metropolitan area fails, for three consecutive fiscal years--
> (1) to meet the requirements of subsection (a); and
> (2) to have a cumulative total of 3,000 or more living cases of AIDS (reported to and confirmed by the Director of the [CDC]) as of December 31 of the most recent calendar year for which such data is available.

42 U.S.C. § 300ff-11(b).

The requirements of subsection (a) are those that define what an EMA is: a metropolitan area with a cumulative total of more than 2,000 cases of AIDS during the most recent period of 5 calendar years.  See 42 U.S.C. § 300ff-11(a).

Plaintiffs claim that although the Nassau-Suffolk's area

-7-

case count for the period 2001-2005 was 1505, this number was not reported for three consecutive fiscal years. Furthermore, for 2004 and 2005, Nassau-Suffolk reported over 3,000 cases of people living with AIDS. Based on these numbers, Plaintiffs contend that Nassau-Suffolk should be granted continued status as an EMA.

But the problem with Plaintiffs' logic is that Nassau-Suffolk never met the criteria to be an EMA in the first place. In December 2006, Congress re-defined what an EMA is: a locality with more than 2000 reported cases of AIDS for the most recent 5-year period. Nassau-Suffolk only had 1505. Therefore, Nassau-Suffolk was not an EMA as defined by the 2006 amendments to the Act. In essence, Nassau-Suffolk cannot continue status as an EMA because it had no EMA status to begin with.

The Court finds that a literal reading of the statute places Nassau-Suffolk in the TGA category, not the EMA category. But to even further support this finding, a review of the Act's legislative history informs the Court that this interpretation is exactly what Congress intended. And Congress spoke specifically to the situation Plaintiffs are in: a locality that was considered an EMA in 2006 but lost such status for 2007. Congress also explains the three-year phase out that Plaintiffs incorrectly rely upon.

-8-

> The Committee created a two tier structure for all metropolitan areas: (1) tier one EMAs with 2000 or more AIDS cases reported during the last 5 years; and (2) tier two Transitional areas with at least 1000 but fewer than 2000 AIDS cases reported in the last five years. **EMAs that received funding in fiscal year 2006 but were not eligible for tier one in fiscal year 2007 would be added to the tier two category.** For all metropolitan areas, eligibility would be bifurcated in that eligibility would be granted **immediately** upon crossing the threshold criteria. However, if there was a declining number of AIDS cases, eligibility would be maintained for three consecutive fiscal years based on both its incidence and prevalence AIDS case counts.

H.R. Rep. No. 109-695, pt. B, at 6 (2006) (emphasis added).

Accordingly, the Court finds that Plaintiffs have not shown a likelihood of success on the merits. The statute provides that Nassau-Suffolk is properly categorized as a TGA, and the legislative history supports such finding. Because Plaintiffs have not met the second requirement for this Court to issue a PI, the Court does not address the first requirement of irreparable harm. The Court DENIES Plaintiffs' motion for a TRO and PI.

## CONCLUSION

Based on the reasons above, the Court DENIES Plaintiffs' motion for a TRO and PI.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:   Central Islip, New York
         March  1    , 2007